Paul Steven Singerman, Esq. (FL Bar No. 378860)
Ilyse M. Homer, Esq. (FL Bar No. 826316)
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Tel.: (305) 755-9500
Fax: (305) 714-4340
Email: singerman@bergersingerman.com
Email: ihomer@bergersingerman.com

Timothy A. Lukas, Esq. (NV Bar No. 4678)
**HOLLAND & HART, LLP**
5441 Kietzke Lane, Second Floor
Reno, NV  89511
Tel.: (775) 327-3000
Fax: (775) 786-6179
Email: ECFlukast@hollandhart.com

*Attorneys for Receivership Funds*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Lead Case No.: BK-19-50102-gs |
| | (Chapter 7) |
| DOUBLE JUMP, INC., | |
| Debtors. | Jointly Administered with: |
| _____/ | 19-50130-gs   DC Solar Solutions, Inc. |
| INTERNATIONAL SPEEDWAY | 19-50131-gs   DC Solar Distribution, Inc. |
| CORPORATION, | 19-50135-gs   DC Solar Freedom, Inc. |
| Plaintiff, | |
| v. | Adv. Pro. No. 22-05006-gs |
| NEIL LURIA, IN HIS CAPACITY AS RECEIVER FOR SOLAR ECLIPSE FUND IV, LLC, SOLAR ECLIPSE INVESTMENT FUND V, LLC, *et al.,* | **Receiver's Reply to ISC's Response to Receiver's Motion to Dismiss and in Support of Motion to Dismiss** |
| Defendant. | |
| _____/ | |

Defendant, Neil Luria, solely in his capacity as court-appointed receiver ("**Receiver**"), for Solar Eclipse Investment Fund IV, LLC and the other investment funds over which he has been appointed Receiver ("**Receivership Funds**"), submits this reply in response to *Plaintiff's Opposition to Defendant's Motion to Dismiss* [ECF No. 31] ("**Response**") and in support of his previously filed motion to dismiss this Adversary Proceeding [ECF No. 10], and states:

1

11557620-1

I. **Preliminary Statement**

Your Honor is actually the *fourth* judge to whom ISC has argued that the Receiver and the non-receivership Funds (with the Receivership Funds, "**Funds**") assert claims that constitute property of the Debtors' bankruptcy estates ("**Bankruptcy Estate**") in the state court litigation pending in Florida ("**Florida Action**"). ISC's blatant forum shopping should not be condoned. ISC failed to cite to this Court on point legal precedent holding that the claims asserted by the Funds are *not* property of the Bankruptcy Estate. This unpublished authority was known to ISC because it happened in the Florida case *between ISC and the Funds* when ISC tried to remove the case to Federal Court.

First, the United States Magistrate Judge squarely rejected the argument ISC now makes to Your Honor:

> ISC has failed to explain how this case has any tangible effect on the bankruptcy estate. **Any recovery would, in other words, *not* be from the debtor's estate. … And any relief would also be for the sole benefit of Plaintiffs, not DC Solar.**

Report and Recommendation on Plaintiffs' Motion for Remand, No. 1:20-cv-25257-DPG (S.D. Fla. Feb. 16, 2021) [ECF No. 30] at 30-31(emphasis supplied). (Exh. A to Notice of Unpublished Authority); *see also* Report and Recommendation on Plaintiff's Motion to Remand, No. 1:20-cv-24012-DPG (S.D. Fla. Jan. 13, 2021) [ECF No. 36] at 20-21 (Exh. B to Notice of Unpublished Authority). Specifically rejecting ISC's argument that the federal court possessed "related to" jurisdiction over claims being asserted in state court against ISC,[1] the Magistrate Judge stated that

> it is entirely unclear as to how this case is "related to" the pending bankruptcy matter in Nevada when all we have here is one non-debtor seeking damages against

---

[1] The Funds do not dispute the general proposition that bankruptcy courts possess jurisdiction to determine if property constitutes property of the estate. Response at 7. Instead, the Funds submit that the claims they are prosecuting in the Florida Action against ISC are beyond the scope of the Court's "related to" jurisdiction because they involve non-debtor third parties. Any recovery from ISC would **not** be paid to **or** come from the Bankruptcy Estate.

2

11557620-1

other non-debtors. This is a glaring shortfall in exercising "related-to" jurisdiction **because nowhere in the complaint do Plaintiffs seek a recovery in connection with DC Solar's bankruptcy estate**. And courts have repeatedly held that "claims to recover non-estate property do not satisfy the 'related to' requirement."

Report and Recommendation on Plaintiffs' Motion for Remand, No. 1:20-cv-25257-DPG at 29 (citations omitted) (emphasis supplied).[2]

Second, ISC challenged the Magistrate's Report and Recommendation to the District Court in Case No. 1:20-cv-24012, including even that there were no misrepresentations by ISC to the Funds. This is the same argument ISC made to Your Honor at the June 30, 2022 status conference.[3] The District Court Judge also rejected ISC's arguments, holding:

> Indeed, while DC Solar is repeatedly referenced, **there is nothing in the Complaint which would indicate that Plaintiffs' recovery would be from DC Solar's Estate**.

Order Adopting Judge Torres' Report and Recommendation, No. 1:20-cv-25257-DPG (S.D. Fla. Aug. 10, 2021) [ECF No. 43] at 3-4 (Exh. C to Notice of Unpublished Authority); *see also* Order Adopting Judge Torres' Report and Recommendation, No. 1:20-cv-24012-DPG (S.D. Fla. June 23, 2021) [ECF No. 52] at 4-5 (Exh. D to Notice of Unpublished Authority).

Beyond disputing that the prior remand litigation in federal court did not determine whether the Funds' claims in the Florida Action were property of the Bankruptcy Estate, Response at 9,

---

[2] The tort claims being asserted in the Florida Action do not "arise under" the Bankruptcy Code or "arise in" connection with the Debtors' chapter 7 cases. *See In re Ray,* 624 F.3d 1124, 1131 (9th Cir. 2010). ISC argues "arising under" jurisdiction exists regarding a determination of whether the Florida Action is property of the estate. Response at 7-8. But ISC's request for a declaratory judgment is premised on state law claims asserted against it in the Florida Action *which have no basis in the Bankruptcy Code. See Ray,* 624 F.3d at 1131 ("A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, it if involves a cause of action created by a statutory provision of the Bankruptcy Code.").

[3] ISC *Memorandum in Opposition to Motion for Remand*, No. 1:20-cv-24012-DPG (S.D. Fla.) [ECF No. 22] at 10; June 30, 2022 Tr. at 20:6-11; 26:17-21.

3

11557620-1

ISC argues that legal *precedent* arising from that litigation is outside the pleadings. *See id.* at 8 n.3. That is ridiculous. Legal authority is not evidence. In addition, ISC argues that two federal judges' holdings are irrelevant. *See id.* at 8-9. This is also ridiculous. Although this precedent from the United States District for the Southern District of Florida is not binding on Your Honor, both Judges addressed the exact issue ISC raises here—holding "there is nothing in the Complaint which would indicate that Plaintiffs' recovery would be from DC Solar's Estate"—under the very same jurisdictional statute, 28 U.S.C. 1334(b), that applies here. *See* Order Adopting Judge Torres' Report and Recommendation, No. 1:20-cv-25257-DPG [ECF No. 52] at 3-4.

Third, the Florida Action was then remanded back to the Florida court, where a new Complaint was filed consolidating Plaintiffs' claims because ISC refused to accept service of the prior complaint and the time to serve had expired in state court due to ISC's removal to federal court and the duration of the federal court remand litigation. ISC then made the same argument to a third judge—the Florida state court Judge—but did not set their Motion to Dismiss for hearing.

Fourth, by this Adversary Proceeding, ISC has decided to forum shop for a fourth judge—Your Honor—to hear its arguments. ISC filed this Adversary Proceeding and its amended motion for TRO and preliminary injunction [ECF No. 21] asking Your Honor to decide the *same issue* already rejected by a United States Magistrate Judge and a United States District Judge and already filed and currently pending before a Florida state court Judge.

It is troubling that ISC did not disclose the fact or circumstances of the adverse rulings it suffered in the removal/remand litigation as part of its recitation of the procedural background in any of the pleadings it has filed in this Adversary Proceeding with the exception of a passing reference in its Response, *see* pg. 8. While not binding in this Adversary Proceeding, these rulings squarely refute the proposition urged by ISC that the claims the Funds are prosecuting in

4

11557620-1

the Florida Action are derivative claims. In fact, these rulings squarely support the proposition that the Funds' claims are direct claims involving non-debtors that do not constitute property of the Bankruptcy Estate, and as a result this Court lacks subject matter jurisdiction over them. If the claims being asserted in the Florida Action were property of the Bankruptcy Estate, the District Court in the Southern District of Florida would have found it had "related to" jurisdiction. But it did not do so. Accordingly, the Funds are not putting "the cart before the horse," Response at 6, by citing to the adverse rulings ISC suffered in the removal/remand litigation. Indeed, in denying ISC's request for a TRO, this Court has already found that the claims being asserted in the Florida Action by the Funds are direct claims.

The timing of the rulings in the removal/remand litigation and this Court's approval of ISC's settlement with the Trustee, the epicenter of this dispute, profoundly undermines ISC's *bona fides* and legal position. ISC had the benefit of two Reports and Recommendations and District Court Orders from the Southern District of Florida adopting them *months before* the January 13, 2022, hearing on the approval of its settlement with the Trustee ("**Trustee-ISC Settlement**") [ECF No. 3141 (Hr'g Transcript)], and before Your Honor entered the order approving that Settlement on January 19, 2022, [ECF No. 3114].[4] ISC states that "neither the Settlement Agreement, … nor the Funds' current claims against ISC (filed November 2, 2021) even existed" at the time the District Court ordered remand over ISC's objection. *See* Response at 9. ISC then argues that, therefore, "it is impossible for a … District Court sitting in Florida to make a determination about this Court's exclusive jurisdiction over property of the estate for claims that had not even been

---

[4] ISC states that "[t]he clear terms of the approved [Trustee-ISC] Settlement Agreement were known to the Funds." Response at 4. This is true but irrelevant. None of the Trustee-ISC Settlement, the transcript of the approval hearing or the approval order referenced the Florida Action or provided for a bar order barring continued prosecution of that Action.

5

11557620-1

asserted at the time the alleged determination was made." *Id.* This allegation is misleading at best. ISC makes this representation to Your Honor while neglecting to disclose the filing of the *initial* complaint in Florida state court occurred on September 1, 2020, several months *before* issuance of the Reports and Recommendation on January 13, 2021 (No. 1:20-24012) and February 16, 2021 (No. 1:20-25257), and the Orders adopting them on June 23, 2021 (No. 1:20-24012) and August 10, 2021 (No. 1:20-25257). It is irrefutably the case that ISC knew precisely what the Funds were suing it for in the Florida Action, and any suggestion by ISC to the contrary is baseless. Armed with that knowledge and substance of the Reports and Recommendation and District Court Orders, ISC could have reconsidered the wisdom of the settlement it reached with the Trustee on December 6, 2021, or abandoned it or conditioned it on the issuance of a bar order by this Court barring the Funds from continuing to prosecute the Florida Action. And ISC could have raised this issue with the Court at the January 13, 2022, hearing on the approval of its settlement with the Trustee. But it did none of those things. Instead, it proceeded with the Trustee-ISC Settlement with the Trustee approved by this Court on January 19, 2022, and paid the Trustee $5,750,000—eyes wide open that a federal court in Florida rejected the very theories it now advances in this Court.

In the face of these undisclosed adverse rulings, ISC has commenced the instant Adversary Proceeding and has threatened to seek yet more of this Court's time with litigation to set aside its settlement with the Trustee *and* the Trustee's settlement with the Funds if this Court does not rule in its favor. ISC's conduct is outrageous.

## II. The Allegations in the Funds' Florida Complaint Govern the Determination of Whether Those Claims are Direct Claims or Derivative Claims

According to controlling California state law, "[i]n determining whether an individual action as opposed to a derivative action lies, a court looks at the gravamen of the wrong *alleged in*

6

11557620-1

*the pleadings.*" *Holistic Supplements, L.L.C. v. Stark,* (2021) 61 Cal.App.5th 530, 542 (quotation omitted) (emphasis supplied); *Van Steenwyk v. Van Steenwyk,* 2021 WL 4815212, at *6 (C.D. Cal. Mar. 23, 2021) (examining allegations in a complaint in determining whether claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty were direct claims or derivative claims) (applying California law). Caselaw cited by ISC is in accord. *See, e.g., Patrick v. Alacer Corp.*, 167 Cal.App.4th 995, 1016 (Cal. App. 4th Dist., 2008) (reviewing complaint's allegations in determining that plaintiff's fraud claim against defendant was a direct claim); *In re Mark One Corp.*, 619 B.R. 423, 436-40 (Bankr. E.D. Cal. 2011) (applying California law) (reviewing allegations in state court complaint); *In re Advanced Packaging & Prods. Co.*, 426 B.R. 806, 820-21 (C.D. Cal. 2010) (same).[5] Florida law holds the same: "We look to the body of the complaint to determine whether the injury is direct to the shareholder or the corporation." *Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 740 (Fla. 3d DCA 2014); *Arbitrage Fund v. Petty*, 307 So. 3d 119, 126 (Fla. 3d DCA 2020) ("In so far as all counts directly or indirectly alleged this particular harm, they sufficiently pleaded a direct harm for which the Unaffiliated Shareholder has standing to sue directly under *Dinuro*."); *see also Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) (claims direct where complaint "state[d] that the defendants made intentional misrepresentations to … plaintiffs and thereby fraudulently induced them to invest their money").

---

[5] Quoting from *In re Madoff*, 848 F.Supp.2d 469 (S.D.N.Y. 2012), ISC states that when based on factual allegations in support of tort claims where the "wrongs pleaded" in the state court action and the trustee's federal action are the same and the state court complaint "explicitly rel[ies]" on allegations made by the trustee, the claims were property of the estate. Response at 9-10. ISC's reliance on *Madoff* for the proposition that courts compare factual allegations in determining whether state law claims are direct or derivative is not only **directly contrary** to several of the cases ISC cites, above, which confirm that the allegations in the state court complaints control, but misplaced. Unlike in *Madoff*, the FL Complaint does not rely on a complaint filed by the Trustee because she did not file a complaint—instead as this Court knows full well, the matter was settled pre-suit.

7

11557620-1

ISC states that "*Medsker* only suggests that [misrepresentation claims are direct claims] if there are statements by defendants to plaintiffs. None exist here." Response at 13; *see also id.* at 6. But this is simply false—such allegations are made in the FL Complaint. *See, e.g.,* Exhibit 5 to ISC Adversary Complaint (Complaint filed in Florida Action, hereafter, the "**FL Complaint**"), ¶¶ 5 ("ISC knew that ISC's false statements in the ISC Fraudulent Sublease would be provided to the Funds to induce them to invest or to maintain their investments, **and in fact they were**.") (emphasis supplied); *see also* FL Complaint, ¶ 2 ("ISC knew the fraudulent sublease agreement would be used to induce the Funds to invest in DC Solar or to maintain their current investments in DC Solar.") and ¶ 52 ("Kelleher and ISC knew in December 2016 that DC Solar was using its deals with ISC to close deals with prospective investors and to maintain current investors' investments. ISC knew that DC Solar needed to show current and potential investors that there was a robust lease market for MSGs and that MSG sublease agreements were in place. ISC further knew that ISC's deals with DC Solar would be provided to prospective and current investors to solicit and persuade investors to invest and to maintain their investments."); 72 (reciting false statement of material facts by ISC), 74 (alleging ISC knew the statements were false when made), 75 (alleging **reliance** upon ISC's false statements) and 76 (alleging ISC's false statements were the **legal cause of the damages the Funds suffered**).

Even further, Florida law does not require that the misrepresentations be made directly to Plaintiffs but may be repeated to them. *See, e.g.,* Florida Standard Jury Instr. 409.7 ("Third, whether (defendant) intended that *another* would rely on the false statement") (emphasis supplied); Florida Stand. Jury Instr. 409.9 cmt. 2 ("For example, these instructions may require modification *if false information was passed on to the plaintiff by a 'recipient.'*") (emphasis supplied); *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 14 (Fla. 1990); Rest. (Second) of Torts §

8

11557620-1

552(2)(a) (defendant is liable to "the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information *or knows that the recipient intends to supply it*") (emphasis supplied).

ISC states that allegations in its Adversary Complaint must be accepted as true and construed in the light most favorable to the plaintiff. Response at 6. The Funds agree with this legal proposition; however, ISC references the wrong complaint. As the above-cited cases confirm, the allegations due to be reviewed are those in the FL Complaint attached as Exhibit 5 to ISC's Adversary Complaint. Your Honor said so at the June 30 hearing:

> I can tell you, **to the extent I read <u>the [Funds' FL C]omplaint</u> and it says its a claim for misrepresentations based upon statements made by ISC, you're going to have a very hard time convincing me that it is property of the estate**.

June 30, 2022 Hr'g Transcript at 30:25 thru 31:1-4 (emphasis supplied).

That a complaint is reviewed to determine if it states a direct or derivative claim is true under federal law as well, where even a plaintiff is not entitled to discovery to prove it is asserting a direct claim. *See, e.g., In re Facebook, Inc. Shareholder Deriv. Privacy Lit.*, 411 F. Supp. 3d 649 (N.D. Cal. 2019) (holding that a plaintiff's standing to sue in a derivative suit must be determined on the basis of the well-pled allegations of the complaint). The question for the Court is what is pled, not what a jury will ultimately determine. *See id.*

Put another way, if ISC is correct that the Funds cannot prove the misrepresentation claims pled, that does *not* mean that the Funds asserted a derivative claim—it simply means that the Funds will be unable to prove the facts of the direct claim they alleged in their FL Complaint at trial. The result will be that there is no recovery from ISC—either the Funds have pled a direct claim *or* they cannot prove a direct claim. In any event, nothing will be taken from the Bankruptcy Estate because the claims are being asserted against ISC, a non-Debtor. Because it is undisputed that, if the Funds

9

11557620-1

prevail in the Florida Action, no recovery will be paid to the Bankruptcy Estate, ISC's reliance upon *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 668 (2d Cir. 1989), cited for the proposition that only a trustee has standing to prosecute claims against third parties that would bring monies into a bankruptcy estate, Response at 12, is misplaced.

In any event, it is impossible for the Trustee to have settled, and this Court to have approved, the settlement of the Funds' claims that are currently pled as direct claims in the Florida Action. To do so, this Court would have to leap ahead and make itself the jury, trial court, and appellate court of Florida, and exercise subject matter jurisdiction it does not possess over claims between non-debtor third parties that are not property of the Bankruptcy Estate. Ultimately, the FL Complaint sufficiently alleges direct claims compelling dismissal of this Adversary Proceeding in favor of the Florida court's continued jurisdiction over the Florida Action. *See* pg. 8-9, above. And the rule of law that investment-induced claims are direct claims does not change, as suggested by ISC, *see generally* Response, even if the Debtors suffered the same or substantially similar harm as the Funds based on the same or substantially similar set of operative facts. *See Sutter,* 28 Cal. 2d 525, 530 (1946) (holding that "a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong" and allowing shareholder to sue in his own right for being fraudulently induced to invest and holding that the corporation also suffered harm did not preclude the shareholder's suit; cited approvingly by the Ninth Circuit in *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1988) for the proposition the "mere presence of an injury to a corporation does not necessarily negate the simultaneous presence of an individual injury."); *Goles v. Sawhney,* 5 Cal.App.5th 1014, 1018 n.3, (2016) ("A single cause of action by a shareholder can give rise to derivative claims, individual claims, or both."); *Crain v. Elec. Memories & Magnetics Corp.*, 50 Cal. App. 3d 509, 521-22

10

11557620-1

(1975) (permitting direct claims where minority shareholders suffered injury, despite simultaneous harm to corporation); *Medkser*, 307 F. App'x at 264 ("The fact that some other investors may have been similarly injured does not transform these direct claims into derivative ones."); *Matter of Buccaneer Res.*, LLC, 912 F.3d 291, 293 (5th Cir. 2019) ("even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events.").

A Ninth Circuit case cited by ISC, *Mosier v. Stonefield Johnson, Inc., CPAs*, 815 F.2d 1161 (9th Cir. 2016), Response at 13, confirms the foregoing rule. In *Mosier*, the Ninth Circuit cited its prior decision in *Smith v. Arthur Andersen LLP*, 421 F.3d 989 (9th Cir. 2005) for the proposition that creditors still maintain their claims even if the receivership suffered damages from the same conduct. 815 F.3d at 1166-67. *Mosier* is otherwise distinguishable because it dealt with a receiver's standing (not a creditor's standing). In *Mosier*, the receiver was found to possess standing to sue on behalf of the receivership entities, not their investors, former auditors whose reports materially misstated the receivership entities' financial condition which prolonged their corporate life allowing looting to continue. *Id.* at 1166-67.

ISC relies upon *Hoyt v. Aerus Holdings, L.L.C.*, 447 B.R. 283 (Bankr. D. Ariz. 2011), for the proposition that where claims being asserted in a state action by a creditor share the same factual predicate of claims assertable by a bankruptcy trustee, then the state law claims belong exclusively to the trustee. Response at 10. This is not the law of California or Florida and not surprisingly, *Hoyt* is distinguishable in a way that renders ISC's reliance thereon misplaced. *Hoyt* turned on the fact that the successor liability claims being asserted in the state law action were in

actuality fraudulent transfer (avoidance) claims that belong solely to the bankruptcy estate absent abandonment. *See id.* at 287. The Funds acknowledge that avoidance claims belong solely to a bankruptcy estate absent abandonment by a trustee, but they assert no such claims in the Florida Action. The same analysis applies to ISC's reliance on other cases, each of which also turned on the determination that state law claims, however denominated, were duplicative of fraudulent transfer claims belonging solely to the bankruptcy estates.[6] ISC's reliance on *In re Plaza Mtg. & Fin. Corp.*, 187 B.R. 37 (Bankr. N.D. Ga. 1995), Response at 13, is also misplaced. *Plaza Mtg.*, cited for the proposition that a trustee possesses standing to assert fraud and conspiracy claims, *id.*, is distinguishable. There, a trustee had standing to sue the debtor's former accountant for malpractice and fraud on the debtor due to preparation of false and materially misleading financial statements and other actions resulting in the debtor being unable to repay investors. 187 B.R. at 43-44.

The Trustee did not possess and could not settle or prosecute the claims being asserted by the Funds against ISC in the Florida Action. *See Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416 (1972) (holding that a reorganization trustee lacked standing to assert claims of misconduct against a third party, a trustee for debenture holders, for holders of the debtor's

---

[6] *See, e.g., In re Madoff*, 848 F. Supp. 2d at 483; *Sec. the Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* 598 B.R. 102 (S.D.N.Y. 2019); *In re Howrey, LLP*, 2014 WL 3899309, at *4-5 (N.D. Cal. Aug. 8, 2014); *In re Bridge Info. Sys., Inc.*, 325 B.R. 824, 835 (Bankr. E.D. Mo. 2005). ISC cites to part of the WHEREFORE clause in the FL Complaint which ISC says reflects that the Funds seek recovery of annual sponsorship fees of $7.5 million. Response at 18. ISC contends that this request for relief constitutes a fraudulent conveyance claim that belongs to the Bankruptcy Estate. *Id.* This is incorrect, but to remove any doubt, prior to filing this Reply, the Funds filed their Plaintiffs' Notice of Election of Remedy with the Florida state court eliminating the disgorgement remedy.

11557620-1

debentures[7]); *Smith,* 421 F.3d at 1002 (holding that a trustee in a reorganization under Chapter X of the Bankruptcy Act did not have standing to assert, on behalf of persons holding debentures issued by the debtor, claims of misconduct by an indenture trustee[8]); *Fluharty v. Stewart*, No. 1:17CV136, 2018 WL 4656412 (N.D. W.Va. Sept. 27, 2018) (affirming bankruptcy court's denial of trustee's motion to compromise claims in state court litigation where such claims did not constitute property of the estate, and lifting automatic stay[9]). The Court recognized as much in its June 17 Order in finding that ISC failed to establish a likelihood of success on the merits, stating as follows:

> The [Funds] sued ISC in the Florida action for fraudulent and negligent misrepresentations that induced them to invest, alleging that ISC concealed facts from the [Funds] that caused the [Funds] to invest in DC Solar, and aiding and abetting and conspiracy to induce the [Funds] to invest in DC Solar. It is unclear to the court how the *trustee* could settle the [Funds'] claims against ISC for misrepresentation and concealment. Thus, ISC has not established that it is likely to succeed on the merits.

[ECF No. 23 at 3 (emphasis in original)].

Still further, at the June 30 status conference before the Court, the Trustee, through counsel, expressly acknowledged that the Trustee-ISC Settlement did not and could not settle the Funds' direct claims against ISC. *See* June 30, 2022 Hr'g Transcript at 23:3-7 ("the trustee can only settle estate claims. The trustee does not – any claims that are direct claims owed by a creditor, **the**

---

[7] ISC argues that *Caplin* does not address whether a claim is property of the estate. Response at 14-15. The Funds cite *Caplin* for the proposition that bankruptcy trustees lack standing to assert creditors' claims.

[8] ISC states that *Smith* acknowledges that a trustee can sue for damages to a debtor. Response at 14. This is true but irrelevant because the Funds are suing for damages *they* suffered.

[9] ISC wrongly asserts that *Fluharty* confirms that the claims by creditors based on the same factual predicate clams asserted on behalf of a bankruptcy estate are derivative claims. Response at 15. Quoting Fluharty, ISC states that claims that are "general and common" to the debtor and creditors are derivative claims; however, the claims here are direct because the misrepresentation and concealment claims were made to the Funds, *not* all creditors of the Debtors.

13

11557620-1

**trustee does not have the authority**."); and 24:8-12 ("the trustee's view is first settlement agreement says what it says, it was approved by the Court, it settles estate claims, and **we did not seek an emotion [*sic*] or did we receive any order of the right to settle anything other than estate claims**.") (emphasis supplied). The Trustee's counsel also confirmed that the Trustee-ISC Settlement did not include a bar order. *See id.* at 23:13-15.

### III. ISC's Fact Arguments Fails Because the Trust for Whether a Claim is Direct or Derivative is *Not* Overlapping Facts But Whether Direct Injury is Pled

ISC now argues that the Trustee-ISC Settlement "reveals the Funds' claims against ISC are based on the same factual predicate as the Trustee's claims, and were always derivative and property of the DC Solar bankruptcy estate." Response at 19-20. This is not the test for whether a claim is direct or derivative. The test is not whether the claims allege similar facts by the wrongdoer, the test is whether plaintiff "is directly and individually injured." *Sutter,* 28 Cal.2d at 530. In fact, under controlling California law, the same facts can lead to *both* a direct and a derivative claim depending on the injury suffered—directly refuting ISC's "fact" argument. *See, e.g., Sutter*, 28 Cal.2d at 530 ("a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong"); *Goles,* 5 Cal.App.5th 1014, 1018 n.3 ("A single cause of action by a shareholder can give rise to derivative claims, individual claims, or both."); *Crain*, 50 Cal. App. 3d at 521-22 (permitting direct claims where minority shareholders suffered injury, despite simultaneous harm to corporation).

Other than an incorrect legal test, ISC offers nothing in its Response beyond what it previously offered through its memorandum of law [ECF No. 22] in support of motion to obtain a TRO or preliminary injunction [ECF No. 21] to demonstrate that the claims being asserted in the

14

11557620-1

Florida Action are derivative claims. Neither the relevant facts nor law has changed between ISC's prior, failed effort to obtain a TRO and its current effort to avoid dismissal of this Adversary Proceeding. The Court should find—again—that the claims asserted in the Florida Action are direct claims that are not property of the Bankruptcy Estate.

## Conclusion

The Court should dismiss this Adversary Proceeding or abstain in favor of the court presiding over the Florida Action. ISC is actively defending the Florida Action through its pending Motion to Dismiss which argues that the Funds "lack standing to pursue these claims against ISC" because they "belong solely to DC Solar's bankruptcy trustee and cannot be asserted and pursued by [the Funds] in this state court." Motion to Dismiss at 3; *id.* at 33 (same). The Judge presiding over the Florida Action should adjudicate this issue and, if resolved in the Funds' favor, he should proceed to adjudicate the merits of the Funds' claims.

Dated: July 28, 2022                    Respectfully submitted,

By: /s/ *Timothy A. Lukas*
Timothy A. Lukas, Esq. (NV Bar No. 4678)
ECFlukast@hollandhart.com
Holland & Hart, LLP
5441 Kietzke Lane, Second Floor
Reno, NV 89511
-- and --
By: /s/ *Paul Steven Singerman*
Paul Steven Singerman, Esq. (FL Bar No. 378860)
Ilyse M. Homer, Esq. (FL Bar No. 826316)
Singerman@bergersingerman.com
Ihomer@bergersingerman.com
DRT@bergersingerman.com
Berger Singerman, LLP
1450 Brickell Ave., Ste. 1900
Miami, Florida 33131

*Attorneys for Receivership Funds*

15

11557620-1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 28, 2022, a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, specifically including counsel for Plaintiff International Speedway Corporation:

Rick R. Hsu, Esq.
rhsu@mcllawfirm.com
Maupin Cox LeGoy
4785 Caughlin Parkway
Reno, NV  89519

Mark R. Owens, Esq.
mark.owens@btlaw.com
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204

Robert C. Folland, Esq.
rob.folland@btlaw.com
Barnes & Thornburg LLP
4540 PGA Boulevard, Ste. 208
Palm Beach Gardens, FL  33418

                                              */s/ Cyndy Arnold*

11557620-1